IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VERONICA TYLER,
o/b/o NLB,

        Plaintiff,

v.                                                                    Case No.  1:15-cv-166-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

                             /

## REPORT AND RECOMMENDATION

Veronica Tyler, on behalf of her minor child, appeals to this Court

from a final decision of the Commissioner of Social Security (the

"Commissioner") denying the application on behalf of her child for

Supplemental Security Income ("SSI") benefits. (ECF No. 1.) The

Commissioner has answered (ECF No. 9), and both parties have filed

briefs outlining their respective positions. (ECF Nos. 12, 13.)  For the

reasons discussed below, it is recommended that the Commissioner's

decision should be reversed and remanded pursuant to the fourth

sentence of 42 U.S.C. § 405(g) for further proceedings.

# I.  BACKGROUND

Veronica Tyler, on behalf of her minor child, protectively filed an application for children's SSI benefits on July 26, 2011, alleging an onset of disability on July 26, 2011. (R. 171, 173, 189.)  Plaintiff's[1] application was denied initially and on reconsideration. (R. 68-72.)  On February 28, 2014, following a hearing, the ALJ issued a decision finding that Plaintiff suffered from the severe impairments of ADHD, developmental delay, psychosis, NOS, rule out schizophrenia, paranoid type, bipolar disorder, glaucoma, and left eye blindness, but was not disabled.  (R. 21-36.)  The Appeals Council denied Plaintiff's Request for Review (R. 1-4.), and this action followed.  (ECF No. 1.)

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[1] Even though this action is being brought by the mother on behalf of her minor child, the Court will refer to the minor child as the Plaintiff.

[2] *See* 42 U.S.C. § 405(g) (2003).

would accept as adequate to support the conclusion.[3]  In reviewing the

Commissioner's decision, the district court must view the evidence as a

whole, taking into account evidence favorable as well as unfavorable to the

decision.[4]

Congress has empowered the district court to affirm, modify, or

reverse the decision of the Commissioner, with or without remanding the

cause.[5] Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision.[6]

The district court will reverse a Commissioner's decision on plenary review,

however, if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

---

[3] *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] 42 U.S.C. § 405(g) (sentence four).

[6] *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Commissioner properly applied the law.[7] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[8]

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[9] However, no child who "engages in substantial gainful activity . . . may be considered to be disabled."[10] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

---

[7] *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

[9] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

[10] 42 U.S.C. § 1382c(a)(3)(C)(ii).

laboratory diagnostic techniques."[11] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[12] In determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[13]

The Commissioner has promulgated regulations governing eligibility for SSI benefits.[14] In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[15]

The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[16] First, a child must show that the child is not performing substantial gainful

---

[11] 42 U.S.C. § 1382c(a)(3)(D).

[12] 42 U.S.C. § 1382c(a)(3)(G).

[13] 42 U.S.C. § 1382c(a)(3)(I).

[14] *See* 20 C.F.R. Pt. 416, Subpt I (2003); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

[15] 20 C.F.R. § 416.902 (2007).

[16] 20 C.F.R. § 416.924(a) (2007).

activity.[17] Second, if the child is not working, the child must show that the child suffers from an impairment or combination of impairments that is severe.[18] Third, if there are severe impairments, the child must show that the child's impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.[19] If the child does not meet all three criteria then the child is not disabled.[20]

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[21] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

---

[17] 20 C.F.R. § 416.924(b).

[18] 20 C.F.R. § 416.924(c).

[19] 20 C.F.R. § 416.924(d).

[20]  In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which means the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.  20 C.F.R. § 416.924(d)(1).

[21] 20 C.F.R. § 416.926a(a).

objects; (5) caring for oneself; and (6) health and physical well-being.[22] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[23] An "extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[24]

## III.  SUMMARY OF THE RECORD

### A.  Medical History

Starting in January 2008, Plaintiff sought treatment at Meridian Behavioral Healthcare for his ADHD, which included management of his medication for Concerta and Clonidine.  At Meridian, he was diagnosed with psychosis, NOS, rule out schizophrenia, paranoid type, and ADHD. (R. 255-78, 279-83, 607-57,711-33, 777-827.)

Plaintiff was referred for a learning disability evaluation in February 2010.  Dr. William E. Benet, Ph. D., Psy. D., reviewed Plaintiff's school records.  He administered the Wechsler Intelligence Scale for Children-IV,

---

[22] 20 C.F.R. § 416.926a(b)(1).

[23] 20 C.F.R. § 416.926a(e)(2).

[24] 20 C.F.R. § 416.926a(e)(3).

on which Plaintiff received a full scale IQ standard score of 74.  Dr. Benet also administered the Woodcock-Johnson-III Tests of Achievement, on which Plaintiff obtained a reading score of 76 and a math score of 82.  Dr. Benet opined that Plaintiff's scores were low for his age and grade and may have been affected by his ADHD.  Dr. Benet recommended a general clinical evaluation with a mental status examination and longitudinal history to evaluate Plaintiff for ADHD.  (R. 285-90.)

Plaintiff attended a psychosexual/amenability evaluation on April 14, 2011.  The evaluator noted that he presented with depressed mood and sad effect but was cooperative and easily engaged in conversation.  His insight was poor and his judgment was limited.  The report noted that Plaintiff was sexually abused at five years old by a sixteen year old male, although Plaintiff stated that he "probably forgot" that encounter.  The report detailed Plaintiff's other sexual experiences at a young age, including sexual experiences with relatives and exposure to pornography. The evaluator diagnosed Plaintiff with bipolar disorder, NOS, a victim of sexual abuse of a child, a perpetrator of sexual abuse of a child, and a learning disorder, NOS.  She recommended specialized therapy and that

Plaintiff receive psychiatric services and medication management, among other measures.  (R. 292-98.)

Plaintiff was treated at Shands Eye Center by Dr. Peden (and other physicians) for problems in his left eye, including retinal detachment, borderline glaucoma with ocular hypertension, anterior dislocation of the intraocular lens, and hyphema (pooling of blood).  Plaintiff had a previous history of a ruptured globe repair, which had resulted in poor vision in his left eye eye.  He was hit with a golf ball in his left eye on June 17, 2011, which resulted in instant pain and worsening vision.  He had multiple surgeries on his left eye.  (R. 306-91, 445-508, 515-64, 585-602, 660-82, 738-51.)  Surgery was performed to remove Plaintiff's left eye on August 7, 2012.  (R. 695.)  After surgery, he was doing well.  (R. 740-51.)   He sought a prescription for goggles to play basketball.  (R. 854-865.)

Plaintiff's treating physician, Dr. Marc Peden, completed a childhood disability evaluation form on August 16, 2011.  Dr. Peden assigned Plaintiff "marked" limitations in three domains: attending & completing tasks, moving about & manipulating objects, and health & physical well-being.  In the other domains, he assigned Plaintiff a "less than marked" rating.  As supporting evidence, he wrote that Plaintiff had a severe visual impairment

to his left eye requiring frequent office visits and repeat surgeries.  (R. 299-300.)

Plaintiff's guidance counselor, Ms. Weingarten, filled out a Teacher Questionnaire on October 7, 2011.  She made the following observations: (1) Plaintiff—a fifth grader—read, did mathematics, and wrote at a second or third grade level; (2) Plaintiff had serious problems reading and comprehending written material and comprehending and completing math problems; (3) Plaintiff had a very serious problem expressing ideas in written form; (4) Plaintiff had problems, up to the level of an "obvious problem," in the domains of attending and completing tasks, interacting and relating with others, and caring for himself; and (5) Plaintiff had no problems moving or manipulating objects.  With respect to Plaintiff's health and well-being, she referenced Plaintiff's lost sight in his left eye and that his functioning improved after taking medication.  She provided his transcript—many of the grades were A's and B's, but there were also several C's, D's, and F's.  These classes were all special education.  (R. 397-444.)

Plaintiff underwent a psychological evaluation with Janet Humphreys, Ph.D, on December 22, 2011.  Plaintiff reported daily nightmares of

monsters, and that he used to see a ghost at night.  Dr. Humphreys reported that Plaintiff was sullen and reticent, and started crying when asked to add single digits.  She noted that Plaintiff did not appear shy, but rather rude and uncooperative.  She opined that he was well oriented, that his remote memory was intact, that he could repeat four digits forward and three digits backward, and had problems with simple math.  She stated that he did not appear to put forth much effort during the administration of the Weschler Intelligence Scale for Children Test.  He scored a Full Scale IQ of 54, which Dr. Humphreys opined was an under-representation of his intellectual functioning.  She diagnosed him with rule out malingering.  (R. 566-71.)

A State Agency consultant, Lee Reback, DDS, reviewed Plaintiff's medical records on December 27, 2011.  The consultant concluded that Plaintiff had "less than marked" limitations in all six domains (with the exception of "moving and manipulation of objects, in which there was no limitation).  (R. 571-80.)

A second State Agency consultant, Wendy Silver, Psy. D., reviewed Plaintiff's medical records on February 21, 2012.  She found that Plaintiff had "less than marked" limitations in the domains of acquiring and using

information, attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being, and no limitations in moving and manipulating objects.  (R. 683-92.)

On May 21, 2012, Plaintiff was evaluated for his behavioral difficulties by Siraj Siddiqi, M.D., staff at Meridian. Plaintiff and his mother reported Plaintiff's history of special education, his medication for ADHD, and his abnormal visions—such as seeing a ghost.  Plaintiff's physical exam was normal—Plaintiff had no joint abnormalities in his extremities, normal muscle tone and strength, and no sensory deficits.  (R. 734-37.)

Plaintiff's special education teacher, Mr. Sand, filled out a teacher assessment on January 23, 2013.  In the assessment, Mr. Sand wrote that Plaintiff had serious to very serious problems in the domain of acquiring and using information, very serious problems in the domain of attending and completing tasks, no problems interacting and relating with others, slight to obvious problems moving about and manipulating objects, and obvious to serious problems caring for himself.  Mr. Sand also noted that Plaintiff had a prosthetic eye and asthma, which seemed to affect him daily. (R. 233-37.)

Mr. Sand completed a second teacher assessment on July 22, 2013. The assessment had similar information to the first assessment.  Mr. Sand stated that he knew Plaintiff for three years, and spent the entire day with him during the school week.  As an eighth grader, Plaintiff read at a fifth grade level, worked at a third grade math level, and wrote at a fourth to fifth grade level.  He said that Plaintiff's behavior and academic performance improved with medication.  (R. 239-44.)

At a November 20, 2013 appointment with Dr. Frazier at Meridian, Plaintiff's mother reported that Plaintiff had an excessive fear of bugs and other anxieties and paranoia.  His eye contact at the appointment was appropriate, as was his appearance and hygiene.  Dr. Frazier observed that Plaintiff did not "demonstrate the ability to appreciate the implications of his[] symptoms due to psychiatric impairment," and that he was not capable of making appropriate decisions regarding safety and care due to psychiatric impairment.  Dr. Frazier diagnosed Plaintiff with bipolar disorder, psychotic disorder NOS, and ADHD. Plaintiff reported that he liked to play basketball, video games, and soccer.  (R. 777-79.)

## B.  Hearing Testimony

At the hearing, Plaintiff reported that he mostly received grades of A's, B's, and C's in school.  His favorite subject was math, and he liked physical education the least because he would get hit in the face during dodge ball.  He said that his teacher helps him with math and science.  Mr. Sands is his teacher for the entire school day.

Plaintiff has close friends in school, and testified that he is friends with most of the people in his class.  He said that sometimes other students "mess with him and bully him."  He estimated that he gets in a fight about once a month.  He frequently goes to in-school detention.  He stated that he takes medication in the morning before school, and the medication helps him "ignore people who mess with him" and concentrate. His mother has to remind him to do chores and often yells.  His chores include washing the dishes, taking out the trash, sweeping, mopping, cleaning the bathroom, and taking garbage cans to the road.

For fun, he plays video games, goes to the park with his brother to play basketball and use the swing, acts as the mascot for the basketball team, and plays with a friend at the park.

Plaintiff testified that in 2011, a friend became angry during tag and threw a golf ball at his eye.  He had five surgeries on his left eye and could not see anything, but he could see "fine" with his right eye.

Plaintiff's mother also testified at the hearing.  She stated that her son's grades were slightly lower than he represented, some B's, some C's, and a D.  She said that he does not have too many friends and that she characterized him as a loner.  She stated that Plaintiff only goes outside fifteen minutes, at the most.  Plaintiff's mother testified that Plaintiff is constantly worried about someone picking on him.  (R. 42-67.)

## C.  Findings of the ALJ

In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity and suffered from several severe impairments: ADHD, developmental delay, psychosis, NOS, rule out schizophrenia, paranoid type, bipolar disorder, glaucoma, and left eye blindness.  (R. 24.) In concluding that Plaintiff's impairments did not functionally equal any listing, the ALJ found that Plaintiff had less than marked limitations in the domain of acquiring and using information; less than marked limitations in the domain of attending and completing tasks; less than marked limitations in the domain of interacting and relating with others; no limitations in the

domain of moving about and manipulating objects; less than marked

limitations in the domain of caring for himself; and less than marked

limitations in the domain of health and physical well-being.  (R. 20-26.)

The ALJ therefore concluded that Plaintiff was not disabled.

## IV.  DISCUSSION

On appeal, Plaintiff raises three challenges to the ALJ's decision.

First, the Plaintiff contends that the ALJ's treatment of the teacher's

questionnaires was improper. Second, Plaintiff says that the ALJ erred in

rejecting Dr. Peden's opinion. Lastly, the Plaintiff argues that the ALJ's

findings of no "marked" limitations in the six domains is not supported by

substantial evidence.  The Court will address each of Plaintiff's arguments

below.

## A.  Teachers' Questionnaires

Plaintiff argues that the ALJ erred in his treatment of the opinions

rendered by Mr. Sand and Ms. Weingarten in the teacher questionnaires

they completed.  Mr. Sand is a special education teacher who taught

Plaintiff for three years. According to the testimony and other evidence Mr.

Sands spent the entire day with Plaintiff during the school week.  Ms.

Weingarten is Plaintiff's guidance counselor.  Mr. Sand completed two

questionnaires, one in January 2013 and one in July 2013.

In the questionnaires, Mr. Sand stated that Plaintiff had serious to

very serious problems acquiring and using information, very serious

problems attending and completing tasks, no problems interacting and

relating with others, slight to obvious problems moving about and

manipulating objects, and obvious to serious problems caring for himself.

Ms. Weingarten opined that Plaintiff had obvious problems attending and

completing tasks, interacting and relating with others, and caring for

himself.  Ms. Weingarten rated Plaintiff as having a "serious problem" in

two components of acquiring and using information and as having a "very

serious problem" in one component.  Both Mr. Sand and Ms. Weingarten

found that Plaintiff was working at a grade level at least two to three years

below his actual grade level, if not more.[25]

In his written decision the ALJ briefly discussed both teachers'

opinions.  With respect to Mr. Sand's January 2013 opinion, the ALJ stated

that he gave the opinion partial weight.  The ALJ gave some weight to the

---

[25] Mr. Sand wrote in July 2013 that, as an eighth grader, Plaintiff was at a third
grade math level and a fourth or fifth grade writing level.

opinion that Plaintiff had serious problems acquiring and using information and attending and completing tasks, but noted that Plaintiff's grades were satisfactory.

The ALJ gave no weight to Mr. Sand's opinion that Plaintiff had obvious problems "moving about and manipulating objects," because Plaintiff's physical exams were within normal limits.  The ALJ addressed Mr. Sand's July 2013 opinion, and gave it "some weight" because the opinion was consistent with the medical records in that Plaintiff's academic performance improved with medication.

With respect to Ms. Weingarten's opinion, the ALJ stated that he gave her opinion some weight because the treatment records "show that the child's symptoms are well-controlled when he is on medication."  The ALJ ultimately found that Plaintiff had "less than marked" limitations in all domains except for "moving about and manipulating objects," in which the ALJ found Plaintiff had no limitations.

While the ALJ is not required to discuss every piece of evidence in the record—*Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)—the ALJ is required to explain the weight assigned to "obviously probative exhibits."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)(quoting

*Arnold v. Secretary of HEW*, 567 F.2d 258, 259 (4th Cir. 1977).  Although the opinion of a teacher is not a medical opinion from an "acceptable medical source" as defined by 20 C.F.R. § 404.1513(a), a claimant may use evidence from other sources to show the severity of his impairment. SSR 06-03p, 2006 WL 2329939 at *2.

Social Security Ruling 06-03p addresses the weight that should be given to opinions from non-medical sources, such as "teachers, school counselors, and social workers," who have seen the individual in their professional capacity.  SSR 06-03p, 2006 WL 2329939 at *4.  Under this ruling when considering opinion evidence from non-medical sources, it is appropriate to consider certain factors, including how long the source has known the individual, how frequently the source sees the individual, how consistent the opinion is with other evidence, the degree that the source supports the opinion with relevant evidence, how well the source explains the opinion, whether the source is a specialist or expert related to the individual's impairment, and any other factors that support or refute the opinion.  *Id*. at 4-5; *see also* 20 C.F.R. § 404.1513(d)(4).

The ALJ summarized the content of two questionnaires prepared by Mr. Sand and the questionnaire prepared by Ms. Weingarten.  He gave Mr.

Sand's January 2013 questionnaire only "partial weight."  While the ALJ

stated that he gave the opinion that the child had serious problems

acquiring and using information and attending and completing tasks "some

weight" he discounted the opinion because Plaintiff's grades were

satisfactory even though Plaintiff was in special education.  The ALJ gave

no weight to Mr. Sand's opinion that Plaintiff had obvious problems moving

about and manipulating objects because Plaintiff's physical exams were

within normal limits.

The ALJ gave Mr. Sand's July 2013 questionnaire "some weight"

because his opinion that Plaintiff's academic performance and behavior

improved with medication was consistent with the medical record.  The ALJ

wrote that the other problems identified by Mr. Sand were consistent with

Plaintiff's placement in special education.

With respect to Ms. Weingarten's questionnaire, the ALJ stated that

he gave her opinion "some weight" because Plaintiff's treatment records

showed that his symptoms are well-controlled by medication.

While the ALJ addressed the information contained in each of the

three teacher questionnaires, the discussion of the weight he gave to each

questionnaire was woefully insufficient.  Both Mr. Sand and Ms.

Weingarten had frequent contact with Plaintiff and each had a long relationship with Plaintiff.  For example, Mr. Sand was Plaintiff's special education teacher for three years, and he spent the entire school day with Plaintiff.  Ms. Weingarten was Plaintiff's guidance counselor.  Both teachers opined that Plaintiff was reading, writing, and doing math at least two to three grades below where he was expected to perform.  And most notably, each teacher concluded that Plaintiff exhibited problems (obvious or greater) in at least four of the domains. The ALJ ignored these conclusions.

Considering the factors laid out in SSR 06-03p, both teachers had significant relationships with Plaintiff over a lengthy period of time.  The teachers' questionnaires were consistent with each other, as both teachers noted that Plaintiff had problems in at least four of the domains. Furthermore, Mr. Sand was a special education teacher, which would suggest that he had specialized training in teaching children with academic problems.

Other than referencing Mr. Sand's July 2013 opinion and Ms. Weingarten's opinion, the only portion of the opinions that the ALJ expressly credited was the statement that Plaintiff's symptoms improve

with medication.  The problem with the ALJ's evaluation of the teacher questionnaires is that the ALJ never mentioned or discussed the teachers' relationships with Plaintiff.   Moreover, the ALJ failed to address the teachers' concerns that Plaintiff had serious problems in the other domains, other than to write that these problems were consistent with Plaintiff's placement in special education.  The fact that Plaintiff was in special education, however, ignores the issue of whether Plaintiff exhibited marked or extremely marked limitations in any of the six domains—nor does it explain the ALJ's reasoning for either crediting or discounting the teachers' opinions regarding Plaintiff's problems.  In short, the ALJ's conclusory statements regarding the weight given to these two questionnaires does not adequately explain which parts of the opinions he credited and provides little to no insight as to the reasons he credited some portions of the opinion and discounted others.

While academic performance and treatment records are permissible considerations when assigning weight to an opinion—under SSR 06-03p—the ALJ's reliance on Plaintiff's grades to discount Mr. Sand's opinion, in this case, is not supported by the substantial evidence of record.  First,  Plaintiff's self report of obtaining "A's, B's, and C's" in his

special education classes was challenged by his mother's testimony, in which she testified that Plaintiff had lower grades consisting of "B's, C's, and D's."  Second, the ALJ failed to take into account other factors prescribed by SSR 06-03p in weighing the opinion, such as the nature of the relationship between the teacher and Plaintiff, the consistency of the questionnaires with other evidence, and the professional qualifications of the source.  *See McGruder ex rel. D.J. v. Astrue*, 2012 WL 5817938 (N.D. Ga. Nov. 16, 2012)(discussing the ALJ's failure to consider factors such as the teachers' relationship with the student and the consistency amongst the teachers' questionnaires).  Third, and as noted by the ALJ, all of the grades Plaintiff obtained were in special education classes.

In sum, the ALJ's discussion of the teacher questionnaires does not allow for meaningful review by this Court.  The only portion of the questionnaires that the ALJ clearly credited was the statement that "Plaintiff's symptoms improved with medication."  The ALJ's rejection of the remainder of the opinions of Plaintiff's teachers, Mr. Sand and Ms. Weingarten, is unexplained, other than the ALJ's statement that the problems identified by the teachers are consistent with placement in special education and that Plaintiff's grades are "satisfactory."

Furthermore, the ALJ failed to discuss important considerations required by SSR 06-03p when weighing non-medical opinions, such as the relationship between Plaintiff and the teachers, and the consistency of the questionnaires with the other evidence (beyond grades).  Remand is therefore required for the ALJ to provide further explanation as to his treatment and evaluation of the questionnaires.

## B.  Dr. Peden's Opinion

Plaintiff also challenges the weight the ALJ assigned to the opinion of Plaintiff's treating physician, Dr. Peden.  As a summary of Dr. Peden's opinion, the physician completed a childhood disability form in which he concluded that Plaintiff had marked impairments in three domains: (1) attending and completing tasks; (2) moving about and manipulating objects; and (3) health and physical well-being.  Dr. Peden based his opinion on Plaintiff's "severe visual impairment to the left eye," which the physician noted required frequent office visits and repeat surgeries.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating

physician unless "good cause" is shown to the contrary.[26]  Good cause

may be found when the opinion is "not bolstered by the evidence," the

evidence "supports a contrary finding," the opinion is "conclusory" or "so

brief and conclusory that it lacks persuasive weight," the opinion is

"inconsistent with [the treating physician's] own medical records," the

statement "contains no [supporting] clinical data or information," the

opinion "is unsubstantiated by any clinical or laboratory findings," or the

opinion "is not accompanied by objective medical evidence."[27]  If an ALJ

rejects a treating physician's opinion, he must give explicit, adequate

reasons for so doing, and failure to do so results in the opinion being

deemed accepted as true as a matter of law.[28] If a treating physician's

opinion on the nature and severity of a claimant's impairments is

---

[26] *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  *See also Edwards v. Sullivan*, 937 F.2d 580, 583-584 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[27]*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991), (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)).

[28] *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992).

well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.[29]

While there is no requirement for the ALJ to discuss every medical

record in the administrative record, he is "required to state with particularity

the weight he gave the different medical opinions and the reasons

therefor."[30]  Additionally, because an ALJ is not permitted to substitute his

judgment for that of the medical experts,[31] the ALJ cannot reject portions of

a medical opinion without providing an explanation for such a decision.[32]

Where an ALJ fails to sufficiently explain how he reached his decision, the

Court may not speculate.[33]

The ALJ discussed the content of Dr. Peden's opinion and stated

that he would assign the opinion "little weight."  As good cause for

---

[29] 20 C.F.R. § 404.1527(d)(2).

[30] *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[31] *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

[32] *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[33] *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

assigning the opinion little weight, the ALJ concluded that Dr. Peden's opinion was contrary to Dr. Peden's treatment notes, which demonstrated that Plaintiff "interacts appropriately with medical personnel."  As further reasons to accord Dr. Peden's opinions little weight the ALJ also stated that Dr. Peden's treatment notes evidenced that Plaintiff was not in pain and had recovered from his surgeries.

With regard to the ALJ's statement that Dr. Peden's opinion was inconsistent with Dr. Peden's own treatment notes it is difficult to identify what information in the treatment notes the ALJ found were inconsistent with Dr. Peden's opinion. For example, the ALJ commented that Dr. Peden's notes reflect the child interacted appropriately with medical personnel.  While this may be true it is irrelevant because Dr. Peden did not opine that Plaintiff had any problems "interacting with and relating to others," one of the six domains and the appropriate domain for assessing interactions with others.  *See* 20 C.F.R. § 416.926a(i).  Rather, Dr. Peden found that Plaintiff had marked limitations in three entirely different domains—attending and completing tasks, moving about and manipulating objects, and health and physical well-being.  Thus, the ALJ's reference to

evidence that Plaintiff interacted appropriately with others has nothing to do with whether Plaintiff had difficulties in three of the other domains.

Furthermore, the ALJ pointed to Plaintiff's recovery from his surgeries as evidence supporting his decision to discount Dr. Peden's opinion.  While the only domain this finding could relate to is health and physical well-being, the ALJ never said so.  And the fact that Plaintiff recovered from his surgeries and does not have pain has nothing to do with whether Plaintiff had marked limitations in attending and completing tasks or moving about and manipulating objects.

Dr. Peden also opined that Plaintiff had marked limitations attending and completing tasks.  The regulations provide that "[i]n this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them."  20 C.F.R. § 416.926a(h).  Recovery from surgery and lack of pain— two of the reasons the ALJ identified as inconsistent with Dr. Peden's opinion— has little to do with problems focusing and maintaining attention, in the absence of evidence that Plaintiff's lack of focus is related to ongoing pain.

The fact that Plaintiff recovered from his surgery and no longer has pain also has little to do with whether Plaintiff has limitations "moving about and manipulating objects."  Under the appropriate regulations moving and manipulating things involves several kinds of actions, including hand eye coordination.  20 C.F.R. § 416.926(a)(j)(1)(ii), (a)(j)(3)(vi).  Plaintiff had his left eye removed and currently wears a prosthetic eye.  While Plaintiff may have "recovered" from the surgery and no longer has pain this does not rule out whether Plaintiff has limited ability to manipulate objects or reduced hand-eye coordination in the absence of explanation.

The same applies with regard to the "health and physical well-being" domain.  The regulations state that "[i]n this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section."  20 C.F.R. § 416.926a(l).  Given the evidence of record that Plaintiff continues to have physical and mental impairments after surgery, evidence that Plaintiff recovered from surgery and does not have pain is not inconsistent with Plaintiff having marked limitations in this domain.  In short, without further explanation, the ALJ has failed to show good cause for discrediting Dr. Peden's opinion.

Accordingly, in the absence of additional explanation, the ALJ's references from Dr. Peden's treatment notes do not constitute substantial evidence to demonstrate that Dr. Peden's treatment notes are inconsistent with the marked limitations identified in Dr. Peden's opinion.  The case therefore must be remanded to the ALJ to accord proper weight to Dr. Peden's opinion, and in the event the ALJ determines that Dr. Peden's opinion should not be accorded controlling weight, the ALJ must explain and identify the substantial evidence of record that supports his conclusion to discount the opinion.

## C.  Substantial Evidence

Finally, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff had no marked limitations in any of the six domains.  Because the Court already has concluded that this case should be remanded to the ALJ for further proceedings— and on remand the ALJ will be required to reassess Plaintiff's limitations in each domain— it is unnecessary for the Court to address Plaintiff's argument that substantial evidence does not support the ALJ's decision that Plaintiff had no marked limitations in any domains.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this report and recommendation.

**DONE AND ORDERED** this 14th day of June 2016.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**